# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 09-21123-CIV-KING/BANDSTRA

| | | |
|---|---|---|
| MICHAEL ABELS and | ) | |
| JACKELINE ABELS, husband and | ) | |
| wife, on behalf of themselves and all | ) | **CIVIL ACTION** |
| persons initially similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JPMORGAN CHASE BANK, N.A., | ) | |
| A foreign profit corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Michael Abels and Jackeline Abels, individually and on behalf of all others similarly situated, allege the following upon information and belief, except for those allegations as to themselves, which are alleged based upon personal knowledge.

## NATURE OF THE ACTION

1.      Plaintiffs seek to recover damages from JPMORGAN CHASE BANK, N.A., ("JPMORGAN CHASE"), one of the country's largest residential mortgage lenders, based on exorbitant amounts JPMORGAN CHASE has and continues to charge its borrowers to recover amounts JPMORGAN CHASE allegedly pays to an affiliated company, American Security Insurance Company's ("American Security"), to procure temporary "forced-placed" insurance coverage on the borrowers' residential properties.  Plaintiffs allege that JPMORGAN CHASE's practice of charging its residential loan customers these excessive amounts constitutes a pattern of exploitative profiteering and self-dealing, enabling JPMORGAN CHASE to earn a hidden,

**ALTERS | BOLDT | BROWN | RASH | CULMO**

Miami Design District, 4141 Northeast 2nd Avenue, Suite 201 · Miami, FL  33137   Telephone: 305-571-8550  Fax: 305-571-8558 · www.abbrclaw.com

unfair financial windfall under the guise of recouping premiums allegedly paid for temporary "forced-placed" insurance coverage on the borrowers' properties.  Plaintiffs assert claims for breach of the implied covenant of fair dealing, unjust enrichment and unconscionability to recover this hidden profit from JPMORGAN CHASE.

2.      Plaintiffs bring this action as a class action, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of all persons and entities who, within five (5) years preceding the filing of this action maintained mortgages with JPMORGAN CHASE (the "Class Period"), and were charged for temporary "forced-placed" insurance coverage procured by JPMORGAN CHASE through American Security to insure property secured by a residential mortgage issued and/or held by JPMORGAN CHASE (the "Class").   Excluded from the Class are JPMORGAN CHASE, American Security, any entity in which JPMORGAN CHASE has a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries and/or assigns of any such individual or entity.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over the claims brought by Plaintiffs pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA") because: (i) the amount in controversy exceeds the jurisdictional amount; (ii) the Class consists of thousands of individuals; and (iii) Plaintiffs are citizens of Florida and JPMORGAN CHASE BANK is a citizen of the State of New York.

4.      This Court has personal jurisdiction over JPMORGAN CHASE because it is registered to do business in the State of Florida and has extensive facilities and operations within Florida in Miami-Dade County, Broward County and West Palm Beach County.

5.      Venue is proper in this district pursuant to 28 U.S.C. 1391, because JPMORGAN CHASE has extensive facilities and operations within this District and because Plaintiffs and other members of the Class who reside in this District suffered damages here based on the wrongdoing alleged herein.

## PARTIES

6.      Plaintiffs Michael Abels and Jackeline Abels are and have at all relevant times been residents of Miami-Dade County, Florida, and are otherwise *sui generis*.

7.      Defendant JPMORGAN CHASE is a national bank organized under the laws of the United States of America.  Its headquarters are located in New York City, New York. JPMORGAN CHASE and its related entities constitute one of the largest lending institutions in the country.   JPMORGAN CHASE provides residential lending services to millions of customers, including Plaintiffs.

## FACTUAL ALLEGATIONS

8.      In June 2005, Plaintiffs refinanced a loan from JPMORGAN CHASE in the amount of $194,582.00, secured by a standardized mortgage on their home.  A copy of the mortgage is attached as Exhibit A.

9.      Pursuant to Section 5 of the mortgage, Plaintiffs are required to insure the improvements on the real property against all hazards.  Section 5 of the mortgage states, in relevant part, as follows:

> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  . . .  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of

disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

10.     From the inception of the mortgage until September 26, 2007, Plaintiffs maintained in full force and effect all insurance coverage required by the mortgage, including non-windstorm casualty coverage.   The annual premium for the non-windstorm casualty coverage was approximately $500.

11.     On September 26, 2007, the non-windstorm policy on Plaintiffs' property was not renewed, resulting in a 20-day temporary lapse in coverage until October 15, 2007.

12.     During that 20-day period, JPMORGAN CHASE secured coverage from American Security, an affiliate of JPMORGAN CHASE.   The premium for the 20 days of coverage totaled $403, an annualized premium of well over $7,300, almost 15 times the annualized premium previously paid by Plaintiffs.   A copy of the notification regarding the temporary "forced-placed" coverage JPMORGAN CHASE procured is attached as Exhibit B.

13.     Plaintiffs were charged an excessive, exorbitant amount by JPMORGAN CHASE, which JPMORGAN CHASE allegedly paid to its affiliate American Security to procure temporary "forced-placed" insurance coverage to protect its interest in Plaintiffs' property.

14.     By charging Plaintiffs $403 for 20 days of "force-placed" insurance obtained from its affiliate, JPMORGAN CHASE intentionally engaged in self-dealing and profiteering at the expense of Plaintiffs in a manner not disclosed under Section 5 of the mortgage, nor within the reasonable contemplation of the parties.

15.     All conditions precedent to the relief sought herein have been performed, occurred or been waived.

<u>Lack and/or Inadequacy of Adequate Administrative Remedies</u>

16.     The Florida Department of Insurance and/or the Office of Insurance Regulation ("OIR") govern rates filed by insurance companies.  Although the OIR governs insurance rates filed by insurance companies, this is not an action against an insurance company and, therefore, not subject to Fla. Stat. § 627.371(1), which provides an administrative remedy for insured persons aggrieved by insurance rates.

17.     JPMORGAN CHASE is not an insurance company and, therefore, is not regulated by the Florida Department of Insurance and/or the OIR.  JPMORGAN CHASE is a financial institution, subject to the regulations set forth in Chapter 655, Florida Statutes.  Fla. Stat. § 655.946, which permits a financial institution to purchase force-placed insurance to cover the institution's property interest which is security for a loan or indebtedness, does not contain any administrative remedies for a borrower, like Plaintiffs, to challenge excessive amounts charged by their lender associated with obtaining "force-placed" insurance coverage.  Unlike the OIR, which establishes an administrative remedy for insured persons seeking to challenge excessive insurance rates, the Office of Financial Regulation ("OFR") has no such administrative remedy in place.  Consequently, the only recourse for borrowers, like Plaintiffs, who are charged excessive amounts for force-placed insurance coverage by their lenders, is to bring a civil claim against the lender.

18.     Alternatively, even if an administrative remedy was available, Plaintiffs have exhausted such administrative remedies by filing complaints with the proper administrative agencies.  Plaintiffs filed complaints with the OFR, the Florida Department of Agriculture and Consumer Services, and the OIR, requesting that each of the agencies investigate the conduct of JPMORGAN CHASE described herein.  Copies of these complaints are attached as Exhibits C, D and E, respectively.

19.     The OFR informed Plaintiffs that it does not have jurisdiction over JPMORGAN CHASE, because it is national bank governed by the Comptroller of the Currency Administrator of National Banks.  The Florida Department of Agriculture and Consumer Services also notified Plaintiffs that it did not have jurisdiction over the subject matter, but would forward the request to the Department of Financial Services.  Copies of these letters are attached as Exhibits F and G, respectively.

20.     The Comptroller of the Currency Administrator of National Banks notified Plaintiffs that it had contacted JPMORGAN CHASE, and that JPMORGAN CHASE would respond directly to Plaintiffs.  JPMORGAN CHASE'S agent, CHASE HOME FINANCE LLC, responded to Plaintiffs, stating that it is required to ensure that "[Plaintiffs'] property has insurance coverage at all times" and that it would therefore purchase insurance for periods in which the home was not insured.  JPMORGAN CHASE'S agent acknowledged that the insurance it purchased would be more expensive than insurance Plaintiffs may have obtained themselves, because a property inspection would not be performed by the insurance company. Thereafter, JPMORGAN CHASE'S agent, CHASE HOME FINANCE LLC, sent another letter to Plaintiffs, reiterating its position that the "forced-placed" insurance it purchased is more expensive. Both letters, however, fail to disclose that the insurance provider is an affiliate of JPMORGAN CHASE, an issue not within the reasonable expectation of the parties.  Copies of these letters are attached as Exhibits H, I and J, respectively.

21.     On January 20, 2009, the Chief Financial Officer of the Florida Department of Financial Services responded to Plaintiffs' complaint, forwarded by the Florida Department of Agriculture and Consumer Services, and stated that it would forward Plaintiffs' concerns to the

OFR since "issues pertaining to the banking and financial industries are handled by the Office of Financial Regulation." A copy of this letter is attached as Exhibit K.

22.     On January 27, 2009, the Comptroller of the Currency Administrator of National Banks acknowledged receipt of Plaintiffs' complaint which had been forwarded by the OIR, as well as another complaint forwarded by the OFR in which different case numbers had been established by each agency.  To avoid any further duplication, the Comptroller of the Currency Administration of National Banks decided that it would close the case number with the OIR, but would maintain the original case number with the OFR. A copy of this letter is attached as Exhibit L.

23.     As is evident from the correspondence described above, no meaningful administrative remedy exists to address Plaintiffs' complaints concerning the conduct of JPMORGAN CHASE described herein.

24.     Alternatively, Plaintiffs exhausted whatever administrative remedies may exist, exhaustion of administrative remedies is either not required, has been waived or is futile.

## CLASS ACTION ALLEGATIONS

25.     This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3).  The Class is so numerous that joinder of all members if impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe that Class members number in the thousands.

26.     Plaintiffs will fairly and adequately protect the interest of the members of the Class.  Plaintiffs are members of the Class, their claims are typical of the claims of all Class

members, and they do not have interests antagonistic to, or in conflict with, those of the Class. In addition, Plaintiffs have retained competent counsel experienced in class action litigation.

27.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by JPMORGAN CHASE'S wrongful conduct alleged herein.

28.     There are questions of law and fact which are common to the entire Class and which predominate over any questions affecting individual Class, including:

(a)     Whether JPMORGAN CHASE breached the implied covenant of good faith and fair dealing in its standardized mortgage instruments by charging Plaintiffs and the Class excessive and exorbitant amounts for temporary "forced-placed" insurance which JPMORGAN CHASE procured from its affiliate, American Security, to protect its interest in properties encumbered by its standardized mortgage instruments;

(b)     Whether JPMORGAN CHASE was unjustly enriched by charging Plaintiffs and the Class excessive and exorbitant amounts for temporary "forced-placed" insurance which JPMORGAN CHASE procured from its affiliate, American Security, to protect its interest in properties encumbered by its mortgage instruments;

(c)     Whether the provision in JPMORGAN CHASE'S standardized mortgage instruments allowing it to charge Plaintiffs and the Class for temporary "forced-placed" insurance which it procured from its affiliate, American Security, is unconscionable; and

(d)     Whether and to what extent Plaintiffs and the Class suffered damages.

29.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since a multiplicity of actions could result in an unwarranted burden on the judicial system and could create the possibility of inconsistent judgments. Moreover, a class action will allow redress for many persons whose claims would otherwise be too small to litigate individually.  There will be no difficulty in the management of this action as a class action.

**COUNT I**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH ANDFAIR DEALING**

30.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 8 through 24 above.

31.     The implied covenant of good faith and fair dealing is part of every contract. While the implied covenant cannot override an express contractual term, it attaches to the performance of a specific contractual provision.  The duty to act in good faith limits one party's ability to act capriciously to contravene the reasonable contractual expectations of the other party.

32.     Although Section 5 of its standardized residential mortgage instruments authorize JPMORGAN CHASE to obtain "force-placed" insurance coverage to protect its interest in the event borrowers fail to maintain their required coverages, it does not disclose nor contemplate that JPMORGAN CHASE will profit from Plaintiffs' and Class members' temporary lapse in coverage.  Although its standardized residential mortgage instruments state that temporary "forced-placed" replacement insurance procured by JPMORGAN CHASE may be more expensive than comparable insurance coverage obtained by Plaintiffs and members of the Class, the implied covenant of good faith and fair dealing does not permit JPMORGAN CHASE to charge Plaintiffs and Class members exorbitant and excessive amounts because JPMORGAN

CHASE chooses to procure such insurance through its affiliate, American Security, thereby earning a financial windfall through the transaction.

33.     JPMORGAN CHASE is fully aware that the amount it pays for temporary "forced-placed" insurance coverage is excessive and exorbitant because it maintains copies of the insurance policy coverage declarations for Plaintiffs and members of the Class.  As such, JPMORGAN CHASE is aware of the actual premiums paid by Plaintiffs and Class members for insurance coverage on the mortgaged properties.  Instead of simply renewing lapsed coverage with the same agent and/or same company at or near the same premium, JPMORGAN CHASE procures the insurance through its affiliate, American Security, thereby earning a substantial financial windfall which it seeks to recoup from Plaintiffs and the Class.

34.     JPMORGAN CHASE breached the implied duty of good faith and fair dealing by failing to disclose that temporary "forced-placed" insurance would be procured through its affiliate, American Security, thereby enabling JPMORGAN CHASE to earn a hidden profit.

35.     JPMORGAN CHASE further breached the implied duty of good faith and fair dealing by charging Plaintiffs and the Class excessive and exorbitant amounts associated with the temporary "forced-placed" insurance it procured from its affiliate, American Security, and upon which it earned a hidden profit.

36.     JPMORGAN CHASE'S failure to disclose that temporary "forced-placed" insurance would be procured through its affiliate, and charging Plaintiffs and the Class excessive and exorbitant amounts associated with such temporary "forced-placed" insurance, were not within the reasonable expectations of Plaintiffs and the Class.

37.     Plaintiffs and the Class have and will continue to suffer damages as a result of JPMORGAN CHASE'S breach of the implied covenant of good faith and fair dealing, in an amount to be proven at trial.

## COUNT II
## UNJUST ENRICHMENT

38.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 8 through 24 above.

39.     Although its standardized residential mortgage instruments authorize JPMORGAN CHASE  to procure temporary "forced-placed" insurance to protect its interest and that such insurance may be more expensive than comparable insurance coverage obtained by Plaintiffs and members of the Class, no contract authorized JPMORGAN CHASE to earn a substantial hidden financial windfall by charging excessive and exorbitant amounts to Plaintiffs and the Class for temporary "forced-placed" insurance procured through its affiliate, American Security.

40.     JPMORGAN CHASE has been unjustly enriched at the expense of Plaintiffs and the Class.  It would be inequitable to allow JPMORGAN CHASE to retain these benefits, at the expense of Plaintiffs and the Class.

41.     JPMORGAN CHASE, the benefitted party, ought to compensate Plaintiffs and the Class for all hidden benefits it earned through its placement of temporary "forced-placed" insurance through its affiliate, American Security.

42.     JPMORGAN CHASE has received and is holding funds belonging to Plaintiffs and the Class, which in equity and good conscience it should not be permitted to keep.

43.     JPMORGAN CHASE has and continues to be unjustly enriched at the expense of Plaintiffs and the Class, in an amount to be proven at trial.

<u>**COUNT III**</u>
<u>**UNCONSCIONABILITY**</u>

44.     Plaintiff incorporates by reference the allegations set forth in paragraphs 8 through 24 above.

45.     JPMORGAN CHASE'S standardized residential mortgages include the following:

> 5. Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included with the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the period that Lender requires.  …The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably…If Borrower fails to maintain any of the coverage described above, Lender may obtain insurance coverage, at Lender's option and Borrowers expense. Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage that was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

46.     The above-quoted provision in JPMORGAN CHASE'S standardized residential mortgage instruments is procedurally and substantively unconscionable.

47.     Considering the great business acumen and experience of JPMORGAN CHASE in relation to Plaintiffs and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, and the absence of a meaningful choice of competing lending institutions, the commercial unreasonableness of the contract terms, the purpose and effect of the

terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and therefore unenforceable as a matter of law.

48.     Here, Plaintiffs and the Class are borrowers.   JPMORGAN CHASE does not negotiate these terms with borrowers.  Plaintiffs and the Class were not in a position to bargain for more favorable contract terms, nor were they able to experience the results of JPMORGAN CHASE'S practices before obtaining their mortgage.   With regard to the "surprise factor" of unconscionability, Plaintiffs and the Class were not made aware of the effect of JPMORGAN CHASE'S practices at the time the contract was entered into.  This provision in JPMORGAN CHASE'S standardized residential mortgage instruments is therefore procedurally unconscionable.

49.     The grossly excessive market price, the miniscule risk to JPMORGAN CHASE, the slight inconvenience imposed on JPMORGAN CHASE in procuring temporary "forced-placed" insurance at reasonable prices, and the negligible value of the insurance itself, all demonstrate that JPMORGAN CHASE'S method of self-dealing is substantively unconscionable.

50.     Combined with the absence of meaningful choice, the lack of sophistication of borrowers, and JPMORGAN CHASE'S failure to provide any form of quote or rate information or reveal the hidden profits it received through its procurement of temporary "forced-placed" insurance through its affiliate, American Security, the Court should strike down JPMORGAN CHASE'S replacement insurance policies as unconscionable.

51.     JPMORGAN CHASE has structured totally one-sided transactions.  The absence of equality of bargaining power, open negotiation, full disclosure, and a contract which fairly sets out the rights and duties of each party demonstrate that the transaction lacks those checks

and balances which would inhibit the charging of unconscionable fees. Each excessive policy premium flowing from JPMORGAN CHASE'S self-dealing should be rescinded and refunded to Plaintiffs and the Class.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs Michael Abels and Jackeline Abels, on behalf of themselves and other members of the Class, demand judgment against JPMORGAN CHASE as follows:

(1)    Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(3) of the Federa JPMORGAN CHASE l Rul JPMORGAN CHASE es of Civil Procedure and declaring Plaintiffs to be representatives of the Class;

(2)    Awarding damages suffered by Plaintiffs and the Class as a result of the wrongs complained of herein, together with appropriate interest;

(3)    Declaring that JPMORGAN CHASE has been unjustly enriched and requiring JPMORGAN CHASE  to refund all unjust profits and other benefits to Plaintiffs and the Class;

(4)    Declaring Section 5 of JPMORGAN CHASE'S standardized residential mortgages relating to insurance coverage to be procedurally and substantively unconscionable, and requiring JPMORGAN CHASE to refund all excess amounts it has charged to Plaintiffs and the Class by virtue of said provision;

(5)    Awarding Plaintiffs and the Class costs and disbursements and reasonable allowances for the fees of Plaintiffs' and Class' counsel and experts, and reimbursement of expenses; and

(6)    Such other and further relief as the Court may deem just and equitable.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all claims and issues so triable.

> *s/Robert C. Gilbert*
> Robert C. Gilbert (Fla. Bar No. 561861)
> Robert B. Brown, III (Fla. Bar No. 621609)
> Jeremy W. Alters (Fla. Bar No. 111790)
> Kimberly L. Boldt (Fla. Bar No. 957399)
> ALTERS|BOLDT|BROWN|RASH|CULMO
> Miami Design District
> 4141 NE 2nd Avenue
> Suite 201
> Miami, Florida 33137
> Telephone:    (305) 571-8550
> Facsimile:      (305) 571-8558
>
> *Attorneys for Plaintiffs*

*Case No. 09-21123-CIV-KING/BANDSTRA*

## <u>CERTIFICATE OF SERVICE</u>

     **I HEREBY CERTIFY** that on this 30th day of July, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.


                                               */s/Robert C. Gilbert*
                                               Robert C. Gilbert (Fla. Bar No. 561861)


## <u>SERVICE LIST</u>

Dennis M. Campbell (Fla Bar No. 271527)
CLARKE SILVERGLATE & CAMPBELL, P.A.
799 Brickell Plaza
Suite 900
Miami, FL  33131
Telephone:     (305) 377-0700
Facsimile:     (305) 377-3001
Email:          dcampbell@csclawfirm.com
*Attorneys for Defendant*
[Service via CM/ECF Notice of Electronic Filing]


LeAnn Pederson Pope (*pro hac vice* pending)
Stephen R. Meinertzhagen (*pro hac vice* pending)
Michael G. Salemi (*pro hac vice* pending)
BURKE, WARREN, MACAY & SERRITELLA, P.C.
330 North Wabash Avenue
22nd Floor
Chicago, IL  60611-3607
Telephone:     (312) 840-7000
Facsimile:     (312) 840-7900
Email:          lpope@burkelaw.com
                  smeinertzhagen@burkelaw.com
                  msalemi@burkelaw.com
*Co-Counsel for Defendant*
[Service via CM/ECF Notice of Electronic Filing and U.S Mail]