IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-21123-CV-KING

MICHAEL ABELS and
JACKELINE ABELS, husband and
wife, on behalf of themselves and all
persons similarly situated,

      Plaintiffs,

vs.

JPMORGAN CHASE BANK, N.A.,

      Defendant.

_____/

## ORDER DENYING MOTION TO DISMISS

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss (DE #25). Plaintiffs have responded (DE #27), and Defendant has filed a Reply (DE #28). After careful consideration and for the reasons set forth below, the Court determines that the motion should be **DENIED.**

**I.    Background**

The Second Amended Complaint (DE #18), filed as a putative class action, contains the following allegations. In June 2005, Plaintiffs refinanced a loan with Defendant, secured by a mortgage on their home. Pursuant to section 5 of the mortgage, Plaintiffs are required to maintain insurance on the property. Section 5 of the mortgage provides as follows:

> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. . . . Borrower acknowledges that the cost of

1

> insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

From the inception of the mortgage until September 26, 2007, Plaintiffs maintained the appropriate insurance coverage, including non-windstorm casualty coverage. The annual premium for non-windstorm casualty coverage was approximately $500. On September 26, 2007, Plaintiffs failed to renew the non-windstorm policy, resulting in a 20-day lapse in coverage until October 15, 2007. During that 20-day period, Defendant secured insurance coverage from American Security, an affiliate of Defendant, at a rate of $403 for the 20-day period. Defendant has now demanded reimbursement from Plaintiffs of the $403.

Plaintiffs claim that this rate is excessive and that Defendant engaged in self-dealing by purchasing insurance from one of its own affiliates. Plaintiffs have asserted three separate counts, including: I) Breach of Implied Covenant of Good Faith and Fair Dealing, II) Unjust Enrichment, and III) Unconscionability.

## II.   Legal Standard for Motion to Dismiss

"For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003). The complaint may be dismissed if the facts as pled do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69, 1974 (2007) (abrogating the old "unless it appears beyond a doubt that the plaintiff can prove no set of facts" standard and replacing it with a standard requiring "only enough facts to state a

claim to relief that is plausible on its face"); *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc) ("Pleadings must be something more than an ingenious academic exercise in the conceivable.") (quoting *United States v. Students Challenging Regulatory Ag. Proc.*, 412 U.S. 669, 688 (1973)). More simply, dismissal is appropriate if the plaintiff has not "nudged [its] claims across the line from conceivable to plausible." *Twombly*, 127 S.Ct. at 1974.

### III. Discussion

Defendant makes five separate arguments for dismissal, each of which will be addressed in turn.

#### A. The Filed Rate Doctrine

Defendant's first argument is that entire case should be dismissed based on the Filed Rate Doctrine. "[T]he filed rate doctrine recognizes that where a legislature has established a scheme for utility rate-making, the rights of the rate-payer in regard to the rate he pays are defined by that scheme." *Taffet v. Southern Co.*, 967 F.2d 1483, 1490 (11th Cir. 1992). Under this doctrine, "any 'filed rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 19 (2d Cir. 1994). Thus, Defendant argues that, since the insurance rate set by American Security was approved by the Florida Office of Insurance Regulation, Plaintiffs are barred from challenging it.

In response, Plaintiffs argue that Defendant is a bank, not an insurance company, and therefore the filed rate doctrine does not apply to it. Indeed, the purpose of the filed rate doctrine is to "'(1) preserve the regulating agency's authority to determine the reasonableness of rates; and (2) insure that the regulated entities charge only those rates that the agency has approved.'" *Uniforce Temp. Personnel v. Nat'l Council on Comp. Ins.*, 892 F. Supp. 1503, 1512 (S.D. Fla.

1995) (quoting *H.J., Inc. v. Northwestern Bell Tel. Co.*, 954 F.2d 485, 488 (8th Cir.1992)). Therefore, Plaintiffs argue, because the bank is not subject to the extensive administrative oversight that insurance companies are, applying the filed rate doctrine in this instance would not serve either purpose.

The Court finds that Plaintiffs have the better argument. Plaintiffs are not complaining that they were charged an excessive insurance rate, they are complaining that the defendant bank acted unlawfully when it chose this particular insurance company and this particular rate. Indeed, the Supreme Court "has emphasized the limited scope of the filed rate doctrine to preclude damage claims only where there are validly filed rates." *Fla. Mun. Power Agency v. Fla. Power & Light Co.*, 64 F.3d 614, 617 (11th Cir.1995). *See also In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1344 (S.D. Fla. 2001) (holding that the filed rate doctrine did not apply where there was no extensive administrative oversight). Accordingly, the filed rate doctrine does not bar Plaintiffs' case.

### B.   Primary Agency Jurisdiction

Defendant's second argument is that Plaintiffs' entire case is barred by the doctrine of primary agency jurisdiction. "Primary jurisdiction is a judicially created doctrine whereby a court of competent jurisdiction may dismiss or stay an action pending a resolution of some portion of the actions by an administrative agency." *Smith v. GTE Corp.*, 236 F.3d 1292, 1298 n.3 (11th Cir. 2001) (quotations and citations omitted). The purpose of the doctrine is to allow an administrative agency to resolve issues that are within the special competence of that body. *Id.* In Florida, the Office of Insurance Regulation (OIR) has primary jurisdiction over the setting of insurance rates. *Progressive Express Ins. Co. v. Reaume*, 937 So.2d 1120, 1122 (Fla. 2d DCA 2006). Moreover, Florida Statute § 627.371(1) creates a detailed process for challenging an

insurance rate, which requires first complaining in writing to the insurance company, then complaining to the OIR, then seeking review in the appropriate Florida District Court of Appeal. Thus, Defendant argues that Plaintiffs have failed to exhaust their administrative remedies because they have not completed these steps.

The Court disagrees. The OIR only regulates insurance companies, and Florida Statute 627.371 only applies when a person challenges a rate issued by an insurer. Rather, Defendant, a financial institution, is regulated by the Florida Office of Financial Regulation (OFR). Indeed, section 655.946 specifically allows a bank to purchase "force-placed" insurance. However, unlike the chapter 627, chapter 655 does not provide any type of administrative remedy. Furthermore, as noted above, Plaintiffs are not complaining of an excessive insurance rate, they are complaining that the defendant bank acted unlawfully when it chose this particular insurance company and this particular rate.[1] For these reasons, the doctrine of primary agency jurisdiction does not bar this action.

### C. Breach of Implied Covenant of Good Faith and Fair Dealing

Defendant's third argument is that Plaintiffs have not stated a claim for breach of the implied covenant of good faith and fair dealing. "Under Florida law, every contract contains an implied covenant of good faith and fair dealing, requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations. A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Centurion Air Cargo v. UPS Co.*, 420 F.3d 1146, 1151-52 (11th Cir. 2005) (quotations omitted). Defendant's argument is grounded in the principle of Florida law that "a claim for a breach of the implied

---

[1] Moreover, it appears from the attachments to the Complaint that Plaintiffs sent a letter to the OFR, which claimed it did not have jurisdiction over Defendant.

covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract." *Id.* *See also Progressive Am. Ins. Co. v. Rural/Metro Corp.*, 994 So. 2d 1202, 1207-08 (Fla. 5th DCA 2008) ("There can be no cause of action for a breach of the implied covenant absent an allegation that an express term of the contract has been breached."). Thus, Defendant argues that Plaintiffs cannot maintain an action for breach of the implied covenant of good faith and fair dealing because Plaintiffs have not alleged a breach of a specific term of the contract.

In response, Plaintiffs cite to *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097-98 (Fla. 1st DCA 1999), which holds that when a specific contractual term gives one party discretion in performance under that term, "the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting." *Id.* (quoting *Centronics v. Genicom Corp.*, 562 A.2d 187, 193 (N.H. 1989)). Put another way, "where the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party." *Cox*, 732 So. 2d at 1097-98. Thus, Plaintiffs argue that section 5 of the mortgage agreement gives Defendant discretion in the selection of the insurance company and rate, and that Defendant exercised that discretion capriciously, in bad faith, and in contravention of the parties' reasonable expectations.

The Court finds that Plaintiffs have the better argument. The *Cox* case provides that, as long as the implied covenant does not vary the express terms of the contract, the failure to perform a discretionary act in good faith may be a breach of the implied covenant of good faith and fair dealing. Plaintiffs have alleged sufficient facts to show that Defendant acted

capriciously and in bad faith when it exercised its discretion under section 5 of the mortgage agreement. Thus, Plaintiffs have stated a claim for this cause of action.

### D.     Unjust Enrichment

Defendant's third argument is that the unjust enrichment count should be dismissed for two reasons: 1) Plaintiffs did not allege that they conferred a benefit upon Defendant, and 2) claims for unjust enrichment are barred when an express contract exists. As to the first reason, Defendant contends that it has received no benefit from Plaintiffs because, although it has demanded reimbursement of the $403 insurance payment, Plaintiffs have refused to pay. Plaintiffs argue that, pursuant to the terms of the mortgage, any unpaid insurance premiums are added to the outstanding balance of the mortgage, thereby accruing interest for Defendants. The Court agrees with Plaintiffs. Although the term "benefit" has not been specifically defined by Florida courts, if Plaintiffs have alleged that they conferred a benefit, whether a benefit was actually conferred is a factual question that cannot be resolved on a motion to dismiss. *See Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 2009 WL 901500, *12 (S.D. Fla. 2009) ("Whether the [Defendants] did or did not receive a direct benefit from Plaintiff is a question of fact that cannot be resolved at the motion to dismiss stage in this case.").

As to the second reason, Defendant argues that the existence of the mortgage agreement requires dismissal of the unjust enrichment count. However, Plaintiffs argue, and the Court agrees, that Federal Rule of Civil Procedure 8(d) allows pleading in the alternative, even if the theories are inconsistent. Defendant is correct in that Plaintiffs will not be permitted to recover on both theories, but at this point it would be premature to dismiss the unjust enrichment count simply because an express contract exists. Defendant has not conceded that that Plaintiffs are entitled to recovery under the contract, and it is possible that if their contractual claim fails,

Plaintiffs may still be entitled to recovery under the unjust enrichment count. *See Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 2009 WL 2207818, *8 (S.D. Fla. 2009) ("Although Plaintiff has alleged a breach of contract claim which I have concluded can proceed, it would be premature to dismiss Plaintiff's count for unjust enrichment in this case."). Therefore, the unjust enrichment count should not be dismissed at this point.

### E.     Unconscionability

Defendant's final argument is that Plaintiffs' unconscionability claim should be dismissed because Plaintiffs have not alleged enough facts showing procedural and substantive unconscionability. "To succeed on an unconscionability claim, [Plaintiffs] must demonstrate both procedural and substantive unconscionability. Procedural unconscionability relates to the manner in which a contract is made and involves consideration of issues such as the bargaining power of the parties and their ability to know and understand the disputed contract terms. Substantive unconscionability, on the other hand, requires an assessment of whether the contract terms are so outrageously unfair as to shock the judicial conscience." *Bland v. Health Care & Ret. Corp. of Am.*, 927 So. 2d 252, 256 (Fla. 2d DCA 2006) (quotations and citations omitted). Procedural unconscionability is satisfied here because of the disparity in bargaining power between Plaintiffs and Defendant. *See Powertel, Inc. v. Bexley*, 743 So. 2d 570, 575 (Fla. 1st DCA 1999) (arbitration clause procedurally unconscionable because parties had no meaningful choice in accepting or rejecting the contract). Regarding substantive unconscionability, Plaintiffs have alleged sufficient facts showing that, had they known the full extent of Defendant's permissible conduct under the contract, no reasonable person would have agreed to it. Whether or not a reasonable person would have actually agreed to it is a factual question that

cannot be decided on a motion to dismiss. Therefore, the unconscionability count should not be dismissed at this point.

## IV. Conclusion

Accordingly, after careful consideration and the Court being otherwise fully advised, it is

**ORDERED, ADJUDGED,** and **DECREED** that:

1. Defendant's Motion to Dismiss (DE #25) is hereby **DENIED.**

2. Defendant shall file an Answer **on or before December 11, 2009.**

**DONE AND ORDERED** in Chambers, at Miami, Miami-Dade County, Florida, this 23rd day of November, 2009.

*[signature]*
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

Cc:

**Counsel for Plaintiffs**
Jeremy William Alters
Alters, Boldt, Brown, Rash & Culmo
4141 Northeast 2nd Avenue
Suite 201
Miami, FL 33137
305-571-8550
Fax: 305-571-8558
Email: Jeremy@abbrclaw.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Kimberly Lynn Boldt
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 NE 2nd Avenue
Miami, FL 33137
305-878-8550
Fax: 305-878-8558

Robert Baldwin Brown , III
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 NE 2nd Avenue
Suite 201
Miami, FL 33137
305-571-8550
Fax: 305-571-8558
Email: bob@abbrclaw.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Robert Cecil Gilbert
4141 NE 2nd Avenue
Suite 201
Miami, FL 33137
305-571-8550
Fax: 305-571-8558
Email: bobby@abbrclaw.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Counsel for Defendant**
Dennis Michael Campbell
Clarke Silverglate & Campbell, P.A.
799 Brickell Plaza
9th Floor
Miami, FL 33131
305-377-0700
Fax: 377-3001
Email: dcampbell@csclawfirm.com
ATTORNEY TO BE NOTICED

LeAnn Pederson Pope
Burke Warren McKay & Serritella
330 N Wabash Avenue
22nd Floor
Chicago, IL 60611-3607
312-840-7000
Fax: 840-7900
Email: lpope@burkelaw.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

Michael G. Salemi
Burke Warren McKay & Serritella
330 N Wabash Avenue

22nd Floor
Chicago, IL 60611-3607
Email: msalemi@burkelaw.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

Stephen R. Meinertzhagen
Burke Warren McKay & Serritella
330 N Wabash Avenue
22nd Floor
Chicago, IL 60611-3607
312-840-7000
Email: smeinertzhagen@burkelaw.com
PRO HAC VICE
ATTORNEY TO BE NOTICED